**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE WOMAN'S NEWSPAPERS, LLC and STEPHEN J. FISKE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05 C 1958 |
| THOMAS CAVANAGH, LAURA CAVANAGH, TRI-COUNTY WOMAN'S PAPERS, INC., and THOMAS AND LAURA CAVANAGH d/b/a NORTHWEST CHICAGO SUBURBAN WOMAN AND THE SUBURBAN WOMAN OF THE NORTHWEST SUBURBS AND THE SUBURBAN WOMAN OF DUPAGE COUNTY AND THE SUBURBAN WOMAN OF KANE COUNTY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the court is defendants' motion to dismiss the amended complaint.  For the following reasons, the motion is denied.

**BACKGROUND**

Plaintiffs, Stephen J. Fiske and his Illinois limited liability company, The Woman's Newspapers, LLC ("TWN"), brought this action against defendants Thomas Cavanagh and Laura Cavanagh and their corporation, Tri-County Woman's Papers, Inc. ("Tri-County").  The amended complaint alleges the following facts, which we take as true for purposes of this motion.

Plaintiff TWN is a company that publishes advertising papers in the Chicago area. Its publications, among them the "Northwest Indiana Woman Newspaper," are geared toward women in various communities and are available free of charge at display stands in local private and public establishments. Plaintiff Fiske "has acquired trademark and service rights to the mark 'WOMAN'S NEWSPAPERS' and the distinctive 'pink' trade-dress, marketing techniques and layout of the Woman's Newspapers, both at common law prior to and after the year 1989 and further by virtue of registrations with the Illinois Secretary of State." (Amended Complaint, ¶ 11.) Fiske has registered two marks with the Illinois Secretary of State: one for "WOMAN NEWSPAPER--THE #1 WOMAN'S EDUCATIONAL NEWSPAPER" and one for "WOMAN NEWSPAPER." (Complaint, Exs. C, D.)[1] Plaintiffs also have an extensive "WOMAN NEWSPAPER" "family of marks" using the "WOMAN NEWSPAPER" "stem work or phrase." (Amended Complaint, ¶ 13.)

On January 23, 2003, Fiske entered into a "Letter of Agreement" (the "First Agreement") with defendants Thomas and Laura Cavanagh.[2] Pursuant to the First Agreement, the Cavanaghs would pay $65,000.00 (in a series of payments) in exchange for "the exclusive use in a geographical area to be designated as Northwest

---

[1] Plaintiffs have incorporated into the amended complaint those exhibits that were attached to the original complaint.

[2] It is alleged that the Cavanaghs own and operate Tri-County and that Tri-County is an "alter ego" of the Cavanaghs. (Amended Complaint, ¶ 7.)

Chicago (Exhibit A attached) of the concept, format, trademark, identity, and marketing techniques used by The Woman's Newspapers and the trade name Northwest Chicago Woman's Newspaper in Cook County, IL.  When paid in full, the Buyer receives the exclusive irrevocable royalty-free license for the trade name, Northwest Chicago Woman's Newspaper." (Complaint, Ex. A, First Agreement at 1.)  On April 16, 2004, Fiske and the Cavanaghs entered into another agreement entitled "Trademark and Trade Dress License Agreement" (the "Second Agreement").  The Second Agreement provided that Fiske was the exclusive owner of "various common and registered law trademarks, service marks, and other words and design marks," deemed the "Property."  (Complaint, Ex. B, Second Agreement at 1.)  In exchange for $35,000.00, Fiske granted the Cavanaghs "an exclusive right, license, and permission to use and utilize the Property solely in connection with the distribution, sale or offering for sale of" a newspaper called the "Kane County Woman's Newspaper" in a specified area and the "nonexclusive right to the unrestricted sale of advertising in any geographical area for" the Newspaper.  (Id.)

In mid-2004, Fiske and the Cavanaghs evidently had a falling-out.  Plaintiffs allege that defendants "have been in breach of the Agreements since at least June of the year 2004" by failing to comply with several different provisions of each Agreement. (Amended Complaint, ¶¶ 15-17.)  It is alleged that since June 2004,

defendants have "commenced and continued use in commerce of confusingly similar 'WOMANS NEWSPAPERS' marks and trade-dress" by publishing papers such as the "Northwest Chicago Suburban Woman Newspaper" (later re-named the "Suburban Woman of the Northwest Suburbs"), as well as the "Suburban Woman of Kane County" and the "Suburban Woman of DuPage County." (Id., ¶ 18; Complaint, Ex. H.) In plaintiffs' view, defendants "seek to trade off the good will and recognition of the WOMANS NEWSPAPERS system without acknowledging the ownership of the WOMANS NEWSPAPERS marks by the Plaintiffs." (Amended Complaint, ¶ 19.) Plaintiffs assert that defendants' "use in commerce of the Plaintiffs' marks, and their operation of the WOMANS NEWSPAPERS as a unifying theme, is likely to cause confusion, to cause mistake, or to deceive members of the public into believing that the Plaintiffs have sponsored or authorized Defendants' use of the WOMANS NEWSPAPERS marks." (Id., ¶ 21.)

Plaintiffs filed this action on April 4, 2005 and filed an amended complaint on June 27, 2005. The amended complaint contains a single federal claim in Count I for unfair competition, false designation of origin, passing off, and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). Several state-law claims are also asserted: fraudulent registration, trademark infringement, and injury to business reputation in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/1

et seq. (Count II); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count III); violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. (Count IV); trespass to chattels (Count V); conversion (Count VI); and breach of contract (Count VII). Plaintiffs seek compensatory damages, punitive damages, injunctive and other equitable relief, declaratory relief, interest, and attorney's fees.

Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir.
1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

Before discussing defendants' arguments for dismissal, we will
address the matter of the defendants who appear in the caption of
the amended complaint.  Plaintiffs have sued the Cavanaghs and Tri-
County, as well as "Thomas and Laura Cavanagh d/b/a Northwest
Chicago Suburban Woman and the Suburban Woman of the Northwest
Suburbs and the Suburban Woman of DuPage County and the Suburban
Woman of Kane County."  The latter defendant is duplicative and
will be dismissed to eliminate confusion.  The Cavanaghs have
already been named, and the titles of their publications are not
business entities separate from Tri-County.

Defendants' first argument is that all of TWN's claims should
be dismissed because it is alleged that only Fiske, and not TWN,
owns the two marks registered with the Illinois Secretary of State.
We reject this argument because defendants overlook the additional
allegation that plaintiff<u>s</u>, plural, "additionally have an extensive
'WOMAN NEWSPAPER' family of marks using the 'WOMAN NEWSPAPER' stem
work or phrase."  (Amended Complaint, ¶ 13.)

Defendants also assert that plaintiffs' infringement claims
should be dismissed because plaintiffs fail "to adequately
articulate with any degree of particularity the design elements of
what actually constitutes" their trade dress.  (Defs.' Mem. at 5.)
According to defendants, "a precise description of what a plaintiff

claims as their trade dress is required to 'determine whether that trade dress is valid and if what the accused is doing is an infringement.'" (<u>Id.</u> at 5-6.) Defendants state in their reply brief that they do not seek a more definite statement and that their argument is not that the complaint is unintelligible, but simply that plaintiffs must "set forth [their] trade dress with specificity." (Defs.' Reply at 3).

In effect, defendants want us to apply a heightened pleading requirement to plaintiffs' claims, but there is no such requirement for trademark or intellectual property claims. Three of the decisions cited by defendants in support of their position are inapposite because those cases were in summary judgment, trial, or post-trial posture.[3] To the extent that the other decisions cited by defendants do seem to apply a heightened pleading standard,[4] we decline to follow them, given the Seventh Circuit's admonition that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law <u>requires</u> a complaint to contain that allegation?" <u>Doe v. Smith</u>, 429 F.3d 706, 708 (7th

---

[3] <u>Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.</u>, 80 F. Supp. 2d 815 (N.D. Ill. 1999) (bench trial on the papers); <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101 (2d Cir. 2001) (appeal from denial of motion for judgment notwithstanding the verdict); <u>Whimsicality, Inc. v. Battat</u>, 27 F. Supp. 2d 456 (S.D.N.Y. 1998) (summary judgment).

[4] <u>Alpha Kappa Alpha Sorority v. Converse, Inc.</u>, No. Civ. A. 3:03-CV-2954-B, 2005 WL 65598 (N.D. Tex. Jan. 12, 2005); <u>BOA (UK) Ltd. v. Ideavillage.com LLC</u>, No. 02 Civ. 2473(SHS), 2002 WL 32093544 (S.D.N.Y. Oct. 8, 2002).

Cir. 2005). The Court continued: "Rule 9(b) has a short list of things that plaintiffs must plead with particularity, but 'interception' is not on that list." Id. "Trade dress" is not on that list, either.

Under the liberal federal system of notice pleading, "[p]laintiffs need not plead facts; they need not plead law; they plead claims for relief. . . . Complaints initiate the litigation but need not cover everything necessary for the plaintiff to win; factual details and legal arguments come later. A complaint suffices if any facts consistent with its allegations, and showing entitlement to prevail, could be established by affidavit or testimony at a trial." Doe, 429 F.3d at 708. Applying this standard, plaintiffs' trade dress infringement claims are sufficient.

The basics of notice pleading also defeat defendants' assertion that several counts of the complaint must be dismissed because nonfunctionality is an element of protectible trade dress, and plaintiffs' "claims of trade dress infringement are devoid of any reference, statement, or allegation" as to nonfunctionality. (Defs.' Mem. at 7.) As explained in Doe, plaintiffs need not plead law. It is well established that "[c]omplaints need not spell out every element of a legal theory." Hemenway v. Peabody Coal Co., 159 F.3d 255, 261 (7th Cir. 1998).

Defendants' next contention is that plaintiffs "appear[] to allege ownership and infringement of . . . marketing techniques," (Defs.' Mem. at 7), and that to the extent infringement of marketing techniques is alleged, those claims should be dismissed because marketing techniques are not protectible. While it is "generally held that an 'abstract image or marketing theme of a product,' a generalized and common marketing approach, or a 'generic idea or concept' is not protectable trade dress," Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 130 F. Supp. 2d 928, 934 (S.D. Ohio 1999), the amended complaint does not define plaintiffs' "marketing techniques" or provide any examples of such techniques. The phrase "marketing techniques" can have different meanings, some "techniques" being encompassed by the concept of trade dress (which is itself difficult to define with precision) and others not. See generally id. at 934-35. Likewise, some trade dress is protectible and some trade dress is not. It seems to us that defendants are again straying into the territory of whether plaintiffs will be able to prove what they have alleged in their complaint, which is a question for a different day. In any event, plaintiffs do not allege infringement of marketing techniques. The amended complaint does allege that Fiske "has acquired trademark and service rights to the mark 'WOMAN'S NEWSPAPERS,' and the distinctive 'pink' trade-dress, marketing techniques and layout of the Woman's Newspapers,"

(Amended Complaint, ¶ 11), but it does not allege any infringement of marketing techniques, merely infringement of marks and trade dress.

Next, defendants present another argument that is more appropriate for a summary judgment motion: "[I]n light of the obvious differences between the parties [sic] marks, the Cavanaghs respectfully suggest that this court conclude that there can be no likelihood of confusion between them, and dismiss Counts I-IV on this basis." (Defs.' Mem. at 9.) We decline this invitation. Likelihood of confusion is a question of fact. See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co., 188 F.3d 427, 436 (7th Cir. 1999). Defendants have failed to show that no reasonable factfinder could find a likelihood of confusion under any set of facts that could be proved consistent with plaintiffs' allegations.

Because we have rejected all of defendants' arguments for dismissal of the federal claim, we need not address their argument that we should relinquish jurisdiction over the pendent state-law claims.

Defendants' final contention is that the claims for conversion and trespass to chattels, Counts V and VI, must be dismissed because those torts do not apply to intangible property. Defendants fail to indicate which state's law they believe applies to plaintiffs' state-law tort claims, and they cite only two cases in support of their argument, one applying New York law and one

- 11 -

applying Michigan law.  Our preliminary impression is that Illinois law applies in this case, but in any event it is clear that New York law and Michigan law are irrelevant.  Because defendants' argument is not supported by citations to pertinent authority, it is rejected.

## **CONCLUSION**

Defendants' motion to dismiss the amended complaint is denied. A status hearing is set for January 18, 2006, at 10:30 a.m.

The defendant "Thomas and Laura Cavanagh d/b/a Northwest Chicago Suburban Woman and the Suburban Woman of the Northwest Suburbs and the Suburban Woman of DuPage County and the Suburban Woman of Kane County" is dismissed.  (Thomas Cavanagh and Laura Cavanagh, the individuals, and Tri-County Woman's Papers, Inc. are the remaining defendants.)


DATE:          December 29, 2005



ENTER:         _____

               John F. Grady, United States District Judge